UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20858-CV-LENARD
(15-20529-CR-LENARD)
MAGISTRATE JUDGE REID

MARIUS BERWIN,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

This Cause is before the Court upon Movant's Motion to Vacate pursuant to 28 U.S.C. § 2255 attacking the constitutionality of his convictions or sentences following a guilty plea in Case No. 15-20529-CR-LENARD. [ECF 1].[1] For the following reasons, the Motion should be **DENIED**.

### II. Claims

---

[1] This Report uses the citation "[ECF]" to reference docket entry numbers in the instant federal habeas case. Citations to "[CR ECF]" refer to docket entry numbers in the underlying criminal case, Case. No. 15-20529-CR-LENARD. Any citations to "[CV1 ECF]" refer to docket entry numbers in Case No. 16-23114-CV-LENARD. With respect to references to the Presentence Investigation Report ("PSI"), this Report uses "PSI ¶" to cite to specific paragraphs within that document.

Construing the Motion liberally, consistent with *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Movant raises the following claims:

> 1a. Defense Counsel was ineffective for misadvising Movant that he could only be held accountable for a drug quantity of 5.7 grams of cocaine, rendering the guilty plea involuntary;
>
> 1b. Defense Counsel was ineffective for misadvising Movant that he could not have his sentence enhanced as a leader or organizer of the crime, rendering the guilty plea involuntary;
>
> 2. Defense Counsel was ineffective for misadvising Movant that he could appeal his sentence if he was found responsible of 5.7 grams of cocaine or otherwise sentenced as a leader or organizer of the crime, rendering the guilty plea involuntary.

[ECF 1].

## III. Pertinent Factual and Procedural Background

In a superseding indictment, Movant was charged with (1) conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a), 846; (2) intent to distribute a controlled substance containing a detectable amount of cocaine base, otherwise known as "crack cocaine," in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); (4) intent to distribute a controlled substance containing a detectable amount cocaine base, otherwise known as "crack cocaine," in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). [CR ECF 118].

In exchange for dismissing the first and fourth count, identified as Counts 1 and 12 in the superseding indictment, Movant pled guilty to Counts 2 and 3. [CR ECF 303]. The Court accepted his guilty plea as knowing and voluntary. [ECF 9-1, pp. 31-32].

Prior to sentencing, Movant filed objections to the Presentence Investigation Report ("PSR"), specifically to factual information referring to Movant as a member of a gang, as these references were not mentioned in the factual proffer or the plea agreement. [CR ECF 354-1]. Objections were also filed concerning the amount of drugs attributable to Movant and to Movant's role and relevant conduct. [*Id.*].

At sentencing, the Court, Government, and Defense Counsel agreed to strike all mention of Movant's association with a gang. [ECF 9-2, pp. 4-5]. Next, Defense Counsel objected to the Government's computation of the drug quantity. [*Id.* pp. 6-7]. The Government argued that "the quantity of drugs was based on an actual quantity of drugs that was seized from the trap house [during a 12-week period when wire intercepts caught Movant talking about and supplying the trap house with drugs]." [*Id.* pp. 32-35]. In challenging the Government's calculation, Defense Counsel submitted that Movant stopped selling controlled substances after the execution of the first search warrant and that he only made one sale before that date. [*Id*. p. 37]. Defense Counsel acknowledged that the trap house continued its operations after the first search warrant. [*Id.* pp. 37-39].

To support its calculation, the Government relied upon U.S.S.G. § 2D1.1, Application Note 5,[2] noting that drug ledgers, the seizure of drugs outside of a wire intercept period, and Movant's role permitted the Court to approximate the drug quantity attributable to Movant.

Pursuant to U.S.S.G. § 2D1.1 and § 1B1.1, the Court determined that the approximate drug quantity attributable to Movant was 240 grams of crack cocaine and 240 grams of powder cocaine given the totality of the facts in this case. [ECF 9-1, pp. 45-46]. The Court relied upon the amount seized, transactions that were made through a confidential source, Movant's transaction regarding 2 grams of crack cocaine and 2 grams of powder cocaine during the 12-week wiretap period, Movant's intercepted conversations regarding that sale, and Movant obtaining proceeds of these transactions at two trap houses. [*Id.* pp. 44-45]. *See also* [CR ECF pp. 1-6]; PSI ¶¶ 6-9, 14, 18, 20-22, 31-57, 60, 63-70.

A probation officer later corrected the Court and concluded that the amount of drugs was equivalent to 782 kilograms of marijuana, composed of 281.1 grams of cocaine and 203.4 grams of crack cocaine. [ECF 9-1 pp. 57-58]. This correction did not change the base offense level. [*Id.* p. 58]. Defense Counsel argued that Movant

---

[2] Under U.S.S.G. 2D1.1, Application Note 5, courts "may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the Defendant and the size or capability of any laboratory involved" when the amount seized does not reflect the scale of the offense to approximate the quantity of the controlled substance.

4

pled guilty only to conduct related to a June 17 transaction. [*Id.* pp. 59-60]. The Court relied upon Movant's factual proffer and the details he admitted to during his Rule 11 plea colloquy. [*Id.* pp. 59-65]. The Court also overruled Defense Counsel's objection concerning Movant's role as a leader or organizer, which resulted in a four-level enhancement. [*Id.* pp. 66-69].

The Court adopted the factual findings and guideline applications as contained in the revised PSR, which was modified at the sentencing hearing. [*Id.* p. 69]. In the revised PSR, Movant's offense level was 31 with a criminal history category of II. [*Id.*]. As to Count Two, Movant's sentencing guidelines range was 121 to 151 months. [*Id.* p. 77]. *See also* PSI ¶ 31. The Court denied a downward variance and sentenced Movant to a bottom-of-the-guidelines sentence of 121 months' imprisonment as to Count Two. [ECF 9-1, pp. 93-98]. *See also* PSI ¶ 143. With respect to Count Three, which required a consecutive mandatory minimum sentence of 60 months' imprisonment, the Court imposed the mandatory minimum. [ECF 9-1, pp. 93-98]. *See also* PSI ¶ 143.

Movant filed a motion to vacate [CR ECF 387] in Case No. 16-23114-CV-LENARD. However, Movant was permitted an opportunity to file an out-of-time appeal of his criminal conviction. [CV1 ECF 13]. The motion to vacate was, therefore, dismissed without prejudice. [*Id.*]. The Eleventh Circuit dismissed the

appeal pursuant to the appellate waiver in the plea agreement. [CR ECF 435]. The instant Motion to Vacate was then filed.

## IV. Threshold Issues - Timeliness

The parties correctly do not dispute the timeliness of Movant's motion to vacate.

## V. Standard of Review

Section 2255 states in relevant part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution...may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in

direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232-33 (11th Cir. 2004) (citations and internal quotations omitted). If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## VI. Discussion

A. Applicable Law

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An ineffective assistance of counsel claim may be raised with respect to errors made by trial counsel or direct appeal counsel, and both are

governed by *Strickland. See, e.g.*, *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016).

The deficiency prong is met if no competent counsel would have taken the action that trial counsel took during the proceedings. *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). Regarding the prejudice prong, it is met if, but for counsel's deficient performance, the outcome of the proceeding would have been favorable. *Strickland*, 466 U.S. at 694. And yet, the error must also be "so serious" that the error "deprive[d] the defendant of a fair [proceeding], a [proceeding] whose result is reliable[,]" in order to satisfy the prejudice prong. *Strickland*, 466 U.S. at 687).

Where, as here, the petitioner challenges his guilty plea based on his counsel's alleged deficient performance, he can show prejudice only if "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

B. <u>Analysis</u>

    *i. The Plea Comports with Rule 11 and is, Presumptively, Valid*

At its core, Rule 11 of the Federal Rules of Criminal Procedure requires a colloquy to meet the following requirements (1) the guilty plea is free from coercion;

(2) the defendant understands the nature of the charges to which he is pleading guilty; and (3) the defendant knows and understands the consequences of his guilty plea. *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999) (relying upon *United States v. Jones*, 143 F.3d 1417, 1418-19 (11th Cir. 1998)).

Once these requirements have been met, "the representation of [a] defendant, his lawyer, and the prosecutor at a plea hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral challenges." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)) (alterations omitted). In fact, there is a strong presumption that statements made during a colloquy are true. *Winthrop-Redin*, 767 F.3d at 1217. Therefore, when challenging the voluntariness of a guilty plea on collateral review, "conclusory allegations unsupported by specifics" and "contentions that in the face of the record are wholly incredible" should be summarily dismissed. *Id.* at 1216.

Under oath, Movant stated no one threatened, induced, or attempted to force him into pleading guilty. [ECF 9-1, pp. 30-31]. The Court inquired about Movant's educational background, age, and mental health history. [*Id.* pp. 4-5]. The Court also confirmed Movant was not under the influence and that he did not use drugs, medication, or alcohol 24 hours prior to appearing before the Court. [*Id.*]. Movant also agreed that no one made any promises or assurances that were not contained

within the plea agreement. [*Id.* pp. 22-23]. Thus, Rule 11's first requirement was met.

Subsequently, the Court inquired whether the use of alcohol, medications, or drugs affected his ability to understand the nature of the charges against him. [*Id.*]. Movant agreed that no such substance stopped him from understanding his Defense Counsel's advice or the nature of the charges against him. [*Id.*]. Movant swore he read the superseding indictment and confirmed that he understood his rights typically associated with proceeding to trial. [*Id.* pp. 4-8]. After the Court listed the charges against Movant and the Government read the factual proffer [*Id.* pp. 8-17], Movant swore he understood the charges and admitted the factual proffer was accurate and did not need any modification. [*Id.* pp. 17-18]. Movant swore that he read and understood the factual proffer and that his signature was on the factual proffer. [*Id.*]. The Court, therefore, complied with Rule 11's second requirement.

With respect to the consequences of pleading guilty, Movant swore that he fully discussed the plea agreement and its consequences with his attorney. [*Id.* pp. 22-23, 30-31]. Among those consequences, Movant swore that he discussed and understood a more severe sentence could be imposed than expected and that his right to appeal, as limited within the plea agreement, would be waived by pleading guilty. [*Id.* pp. 22-23, 30-31]. Movant also swore that he understood that the Court had authority to impose any sentence up to the statutory maximum on both counts, which

was 20 years' imprisonment on Count 2 and life imprisonment on Count 3. [*Id.* pp. pp. 25-26]. Accordingly, as this met the final requirement for a Rule 11 colloquy, Movant's guilty plea is presumptively valid.

### *ii. Ground One*

As Ground One, Movant submits two subclaims relating to Defense Counsel's alleged misadvise to enter a guilty plea. [ECF 1, p. 4]. With respect to the first subclaim, Movant asserts that Defense Counsel informed him that he could only be held accountable for 5.7 grams on Count Two regardless of what was stated in the factual proffer. [*Id.*]. In the second subclaim, Movant argues Defense Counsel told him that he could not be sentenced as a leader or organizer without a conviction on the dismissed conspiracy count. [*Id.*].

*a. Knowledge of the Quantity of the Drugs*

As already stated, Movant agreed the content in the factual proffer was accurate. Thus, Movant swore under oath that he sold 5.7 grams of crack cocaine and 6.8 grams of marijuana on June 17, 2014. [ECF 6-1, pp. 9-10, 17-18]. He further swore that he paid the rent at the 1171 stash house in June, July, September, October, and November of 2014. [ECF 6-1, pp. 10, 17-18]. Within this stash house, Movant agreed that law enforcement found 68.5 grams of marijuana, 46 grams of crack cocaine, 27 grams of powder cocaine; and 43 Xanax bars in July 2014. [*Id.* pp. 10-11, 17-18]. From March through May, as Movant admitted, law enforcement

11

obtained 97.5 grams of powder cocaine and 13.4 grams of crack cocaine from various locations associated with Movant's network. [*Id.* pp. 11-12, 17-18]. In May 2015, law enforcement conducted a traffic stop indicating Movant was transporting narcotics in his car due to the presence of several baggies containing rocks of crack cocaine indicating he was still trafficking drugs. [*Id.* pp. 15, 17-18].

Based on the record, Movant conceded to being involved in distributing far more than 5.7 grams of crack cocaine. He provides no specific allegations as to how he would show his lack of knowledge. Movant's after-the-fact assertions are thus incredible against the presumptively valid statements made in court. *See Winthrop-Redin*, 767 F.3d at 1217.

Importantly, due to the plea agreement, Movant avoided the risk of a more onerous sentence. [CR ECF 118, p. 14]. Count One, which was dismissed pursuant to the plea agreement, contained a maximum statutory penalty of 40 years' imprisonment. [*Id.*]. Counts Two and Twelve each risked 20 years' imprisonment pursuant to their applicable statutory maximums. [*Id.*]. Count Three's statutory maximum posed a risk of life imprisonment. [*Id.*]. Movant swore that he understood that a more onerous sentence than expected, including a sentence of life imprisonment pursuant to Count 3's statutory maximum, could be imposed. [*Id.* pp. 25-26]. Further, although Movant did not receive his requested below-guidelines sentence [ECF 6-2, p. 91], he still received a sentence at the bottom-end of the

guidelines as to Count Two and the mandatory minimum as to Count Three. [ECF 6-2, p. 96].

Movant provides no evidence or specific facts to undermine the truth of his in-court statements regarding his knowledge of the nature of the charges or the consequences he might face by accepting a plea deal. Therefore, Movant cannot satisfy either prong of the *Strickland* standard. *See Winthrop-Redin*, 767 F.3d at 1219.

*b. Knowledge of the Sentencing Enhancement*

Movant further claims Defense Counsel promised him that he could not be sentenced as a leader or organizer of the crime. At the change of plea hearing, Movant was informed that, while his sentence had not yet been determined, "any estimate of the probable sentencing range or sentence…whether that estimate comes from [his] attorney, the Government, or the Probation Office" is "a prediction, not a promise." [ECF 9-1, pp. 26-27]. Movant acknowledged that he understood that no one made promises or assurances to him to induce him to plead guilty. [ECF 9-1, p. 30]. Movant also swore that he understood his guilty plea was still valid even if the sentence was more severe than expected. [*Id.*].

Movant provides no specific allegations to support this claim. As such, Movant cannot establish that Defense Counsel was deficient, as the Court must presume Defense Counsel made no other promises outside of the plea agreement.

Similarly, Movant cannot establish that he would have gone to trial had he known of this risk because he agreed to plead guilty even if a more severe sentence was imposed. As the record refutes his vague and conclusory allegations, the second subclaim should be denied.

### iii. Ground Two

In Ground Two, Movant claims Defense Counsel was ineffective for advising him to sign an appellate waiver. [ECF 1, p. 5]. Prior to signing the waiver, Defense Counsel allegedly informed Movant that he would be able to appeal his sentence if the Court sentenced him as a leader or organizer or for a quantity above 5.7 grams of crack cocaine. [*Id.*]. According to Movant, he would not have pled guilty but for this alleged advice. [*Id.*].

Movant swore that no other promises or assurances outside of the plea agreement were made to him by Defense Counsel. [ECF 9-1, p. 30]. Movant also swore that he understood the appellate waiver. [*Id.* p. 29]. Movant was explicitly informed that "unless the sentence exceeds the maximum permitted by statute" or "is the result of an upward departure and/or variance from the advisory guidelines range" his appellate rights were waived. [*Id.* pp. 28-29].

Thus, Movant's previous sworn statements contradict his assertions that Defense Counsel made additional promises beyond what was contained in the plea agreement. Further, Movant averred that Defense Counsel advised him about the

appellate waiver, and he swore that he understood the appellate waiver. The appellate waiver clearly limited the right to appeal to three circumstances: (1) exceeding the statutory maximum at sentencing; (2) an upward departure at sentencing; and (3) variance from the advisory guidelines range. The determination that Movant is a leader or organizer of the crime or is responsible for more than 5.7 grams of cocaine does not meet any of these exceptions. Movant provides no specific facts to support this claim. In sum, as the record contradicts Movant's in-court statements, his conclusory allegations cannot satisfy either prong of the *Strickland* standard.

## VII. Evidentiary Hearing

Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. *See Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

However, district courts "need not hold a hearing if the allegations are 'patently frivolous,' based upon 'unsupported generalizations,' or 'affirmatively contradicted by the record.'" *Diveroli*, 803 F.3d at 1263 (relying upon *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014)). *Cf. Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if the record refutes the factual allegations or otherwise precludes habeas relief, a district court is not required to

hold an evidentiary hearing in a § 2254 context). As Movant's allegations are contradicted by the record, a hearing is not needed.

## VIII. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus [or motion to vacate] has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). See 28 U.S.C. § 2253 (c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253 (c)(2). To merit a certificate of appealability, prisoners must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Eagle v. Linahan*, 279 F.3d 926, 935-36 (11th Cir. 2001).

In this case, there is no basis to issue a certificate of appealability. If Movant disagrees, he should present his argument to the attention of the District Judge in objections.

## IX. Recommendations

Based upon the foregoing, it is recommended that this motion to vacate be **DENIED ON THE MERITS** that no certificate of appealability issue, and that the case be closed. Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to do so will bar a *de*

*novo* determination by the District Court Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 149 (1985).

SIGNED this 25th day of August, 2020.

_____
UNITED STATES MAGISTRATE JUDGE